**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Gordon P. Gallagher, United States Magistrate Judge

Civil Case No. 17 – CV – 269 – CMA - GPG

BERNARDO MEDINA,

    Plaintiff,

v.

THE GEO GROUP, Inc.,

    Defendant.

---

**RECOMENDATION REGARDING DEFENDANT'S MOTION TO DISMISS**

---

This matter comes before the Court on the following motion: Defendants' motion to dismiss (ECF # 14),[1] Plaintiff's response (ECF# 23) and Defendant's reply (ECF #24). The motion has been referred to this Magistrate Judge for recommendation (ECF #15).[2] The Court has reviewed the pending motion, response, reply and all attachments. The Court has also considered the entire case file, the applicable law, and is sufficiently advised in the premises. Oral argument has not been requested and the Court finds that it is not necessary in this circumstance. This Magistrate Judge recommends that the motion be **GRANTED**.

---

[1] "(ECF #14)" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Recommendation.

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir.1991).

Facts

Plaintiff, a United States citizen, was detained for "approximately a day" (January 27, 2015) by Defendant in its facility at 3130 N. Oakland Street, Aurora, Colorado. ECF #1, pp. 1-3. Defendant operated a detention facility under contract with United States Immigration Customs Enforcement. ECF #1, pp. 3-4. The arrest was "perpetrated by federal officers of Immigration and Customs Enforcement." ECF #1, p. 3. Plaintiff insisted to multiple employees that he was a United States citizen being held mistakenly. ECF #1, p. 4. Plaintiff was aggressively questioned as to why he had not "told them he was an American citizen." ECF # 1, p. 4. Plaintiff was accused of lying and "threatened . . . with some type of vague prosecution." ECF # 1, p. 5. Defendant's employees sent Plaintiff out the door. *Id*. Defendant was not allowed to make a telephone call, was released with essentially nothing in an unknown city, and relied upon Good Samaritans. *Id*.

Additionally, and inexplicably, Plaintiff attaches exhibit 1 to his response (ECF #23-1). This document is a copy of the arrest warrant for Bernardo Medina-Ballesteros. Plaintiff further states that "[his] detention was pursuant to an ICE warrant for alien arrest." ECF #23, p. 3.

Standard of Review

The Court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Dismissal under Rule 12(b)(6) may also be based on the lack of a cognizable legal theory. *See Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo.2004). To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, which, taken as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th

Cir.2012). Although allegations of fact are accepted as true, legal conclusions are not. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Accordingly, the Court disregards conclusory statements and looks only to whether the remaining factual allegations plausibly suggest the defendant is liable. *Khalik*, 671 F.3d at 1190-91.

Where the allegations in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir.2008) (internal quotations omitted). "The nature and specificity of the allegations required to state a plausible claim will vary based on context . . . [and] requires the reviewing court to draw on its judicial experience and common sense." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214-15 (10th Cir.2011).

Matters Outside the Pleadings

Certain documents referred to in a complaint may be considered in the context of a Rule 12(b)(6) motion without converting that motion to one for summary judgment if:  the documents are central to the parties claim and there is no dispute as to the authenticity of the document. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir.2007).  "If [the] documents contradict the allegations of the . . . complaint, the documents control and [the] court need not accept as true the allegations in the  . . . complaint." *Rapoport v. Asia Electronics Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y.2000);  *see also Tal v. Hogan*,  453 F.3d 1244, 1265 n. 24 (10th Cir.2006).

Defendant Geo moves to dismiss all claims in this matter, those being:

1. Negligence;
2. False imprisonment;
3. Intentional infliction of emotional distress; and
4. Assault and battery.

Statute of limitations

With regard to claims two and four (Defendant mistakenly states claim "three" but the text of the pleading makes it clear Defendant was referring to claim four) (ECF #14, p. 9. *But see* ECF # 23, p. 9), Defendant argues that the statute of limitations, C.R.S. 13-80-103, bars those claims for failure to file within one year after the cause of action accrued. *See CAMAS Colorado, Inc. v. Board of County Comr's*, 36 P.3d 135, 139 (Colo.App.2001) (A statute of limitations defense can be considered in a motion to dismiss "[w]hen the bare allegations of the complaint reveal that the action was not brought within the required statutory period") (internal citation removed). The cause of action accrued on or around January 27, 2015. The complaint was filed just inside two years later in this matter on January 27, 2017 (ECF #1), thus outside the one year time frame. Plaintiff concedes this point and accedes and agrees to the dismissal of claims two and four. Therefore, I respectfully recommend that counts two and four be dismissed.

Negligence

Under Colorado, to recover for negligence, a plaintiff must establish the existence of a duty, a breach of that duty, and a causal connection between the breached duty and the injury. *Observatory Corp. v. Daly*, 780 P.2d 462, 465 (Colo.1989). "the initial determination of whether a defendant owes a duty to a plaintiff is a question of law to be decided by the court.

*Davenport v. Community Corrections*, 926 P.2d 963, 966 (Colo. 1998). Plaintiff maintains that "Defendant had a duty to Plaintiff to insure that his detention was justified" and that "Defendant failed to exercise the standards of care of a reasonably prudent person when faced with claims that it was unlawfully holding an American citizen in an immigration detention center." ECF #1, p. 6.

Defendant contends, citing *Sanchez-Penunuri v. Longshore*, 7 F.Supp.3d 1136 (D.Colo.2013) (addressing whether the immediate custodian rule applied in a *habeas* petition in the immigration context) and *Dry v. United States*, 235 F.3d 1249 (10th Cir.2000) (addressing the responsibility of a jailer to question the probable cause for arrest of an inmate), that Defendant Geo had no duty to Plaintiff which could have been violated in this context. Both of those somewhat disparate theories have application in this unusual hybrid circumstance. Here, we have a matter in which the arrest and detention occurred pursuant to a warrant for arrest of alien (ECF #23-1), the arrestee was taken to a private facility under contract with the United States, and the arrestee turned out to not be an alien but instead a citizen.

The analysis necessarily starts on the *Dry* side of the equation, for if a duty is owed, that is perhaps the more lenient side of the equation. A fair reading of *Dry* shows that there is a duty and that such duty arises when there is an "objectively apparent lack of a basis for [] detention which should arouse suspicion . . ." *Dry*, 235 F.3d at 1259. Absent such a basis, "a jailer cannot be expected to assume the mantle of a magistrate to determine the probable cause for an arrest." *Id*. Essentially, no duty arises until that initial basis manifests itself.

While *Dry* does not contain a flood of examples of how such a duty may manifest, a survey of the case law provides elucidation. In *Martinez v. City of Los Angeles*, the Ninth Circuit analyzed a false imprisonment claim stating that a jailer "may be liable if the jailer knows that

5

the imprisonment is unlawful or if there is some notice sufficient to put him, as a reasonable man, under a duty to investigate the incarceration." *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1380 (9th Cir.1998). The Seventh Circuit went farther and stated that the jailer must "possess an affirmative knowledge of the illegality of the arrest" and that the jailer is not responsible for errors "beyond the scope of his responsibility . . . [if] he has acted reasonably and in good faith." *Wood v. Worachek*, 618 F.2d 1225, 1231 (7th Cir.1980). When examining the matter from a § 1983 perspective, the Supreme Court stated "we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity . . ." *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979) (leaving any remedy to tort law).

From the perspective of a pure arrest, outside the bounds of immigration, it is clear that a duty exists, but that such a duty only arises upon the presence of certain attendant circumstances. A jailer cannot just ignore information that would lead a reasonable professional in his or her role to believe that the person arrested was either the wrong person or was there without probable cause. I keep in mind that the average jailer is likely presented, undoubtedly on a regular basis, with arguments and pleas (perhaps from an inmate or family) to the effect that the incarcerated individual is being unfairly held, that they are the wrong person, or that they did not commit the crime of which they are accused. This information, on some occasions, may be true. However, we have largely chosen as a society to leave detention determinations to a magistrate or judge and guilt or innocence to a jury. For many good and thoughtful reasons, we do not imbue jailers with this responsibility. Thus, particularly when the arrest is accompanied by official documentation presented in the regular course of business, the existence of a false arrest would have to be plainly obvious before the jailer would have a duty, a responsibility to act outside

their regular routine of duties.  Put plainly, if the arrest or detention seems appropriate, e.g., a detainee is brought to the facility by law appropriate law enforcement in the possession of the correct paperwork, no further query would be necessary from the jailer unless there was an "objectively apparent lack of a basis for [] detention which should arouse suspicion."  *See Dry* 235 F.3d at 1259.

Turning to *Sanchez-Penunuri*, the immigration context attenuates this analysis even more.  While *Sanchez-Penunuri* examines the matter from the context of whether the immediate custodian rule applies in *habeas* matters, the concepts have applicability to this situation.  *See Sanchez-Penunuri*, 7 F.Supp. 3d at 1141.  Put simply, the immediate custodian analysis in the *habeas* context determines whether the standard rule applies, e.g., is the "immediate custodian" the proper respondent to the *habeas* petition, or is someone else the proper respondent.  *Id*.  This analysis must be engaged in because, as the Ninth Circuit recognized, "the distinctive nature of immigration detention . . . is often outsourced to state, local, and even private facilities" and because "wardens' control over immigration detainees in their institutions results from their limited contractual arrangements with federal authorities."  *Armentero v. INS*, 340 F.3d 1058, 1068 (9th Cir. 2003) (*Armentero I), reh'g granted, opinion withdrawn,* 382 F.3d 1153 (9th Cir. 2004), *opinion after granting of reh'g*, 412 F.3d 1088 (9th Cir.2005) (*Armentero II)*.  The Court in *Sanchez-Penunuri* noted that "apart from an immigration judge, the ICE District Director is the only official who appears authorized by regulation to make custody decisions for immigration detainees" and that "no regulation identif[ies] the warden of an immigration detention facility as the person with authority to release a detainee" and that, due to the facility "outsource[ing]" granting such authority "would make little legal sense, as the wardens' control over immigration detainees . . .results from their limited contractual arrangements with federal

authorities." *Sanchez-Penunuri,* 7 F.Supp. 3d at 1145-46 (internal citation removed).

In the present action, it is not the immediate custodian rule that is at issue but rather the attenuation caused by the immigration context that was explored in *Sanchez-Penunuri* that is of concern in terms of how that applies to the duty which Defendant may have had to Plaintiff in this matter. What I mean by this is that in the normal course of an arrest, the jailer has no duty to independently investigate the probable cause or underpinnings of an arrest existence unless it is plainly obvious that a problem with the arrest exists. The Court keeps in mind that frequently arrests are local, e.g., a county or city detention facility, and the arresting or transporting officer may have some immediate knowledge about the case or inmate at hand which would bear on the reason for the arrest. However, even in arrests outside the context of an immigration detention, this is often not true. Individuals are regularly arrested all over this nation on warrants from near and far and the facilities and local courts involved have the responsibility and Constitutional obligation, *see* Article 4, Section I of the Constitution of the United States, to give "full faith and credit . . .[to the] judicial proceedings of every other state."

The immigration context and immediate custodian rule as discussed in *Sanchez-Penunuri* operate in this same fashion of attenuation. As with immigration cases, often in standard criminal actions, the arrest is not local, the individual with authority is not present, and the documents are in order. Under those circumstances, the local jail or facility, even in a non-immigration case would have no obligation other than to timely bring the individual before a magistrate no matter the stridency of someone's pleas of error, mistake, or injustice. In the immigration context, that person would not be the on-call magistrate in a courthouse nearby but instead an immigration judge or the ICE District Director. This attenuation makes it harder for Plaintiff to establish the existence of a duty.

This situation presents a mixed analysis of both law and fact. As I have stated, a duty exists, but only when a reasonable jailer would come to believe that there was something obviously wrong with the arrest. Thus, in order to state a claim, or in order to avoid dismissal for failure to state a claim under 12(b)(6), the Plaintiff must allege facts which show that this duty reasonably arose in this situation and that it was then negligently ignored.

The facts as presented are that Plaintiff was brought to the Geo Group facility in Aurora, Colorado by an ICE officer (ECF #1, p. 4) and that there existed a warrant for arrest of alien (ECF #23-1). I find it proper to consider the warrant, provided by Plaintiff as an attachment to his response to the motion to dismiss (ECF #23), without converting this into a motion for summary judgment. Defendant does not challenge the authenticity of the document, In fact, if any party were to challenge the authenticity, it would likely to be the Plaintiff and the Plaintiff provided the document. Further, I am utilizing the documents not to prove the truth of the matter asserted (whether or not the warrant was lawful) but instead for its effect on a potential recipient, the jailer. *See Oxford Asset Management, Ltd. V. Jaharis*, 297 F.3d 1182, 1188 (11th Cir.2002). Plaintiff asserts that he "spent two days bouncing through various immigration detention centers in Colorado before he finally arrives at Defendant's detention facility on January 29, 2015." ECF #1, p. 3. At no time does Plaintiff allege that Defendant was aware of the time and place of Plaintiff's arrest.

Based on the foregoing, as a matter of law, I do not find that Plaintiff has demonstrated that Defendant owed a duty to Defendant and thus Defendant cannot have negligently breached a duty which did not exist.

Intentional infliction of emotional distress

Plaintiff's third claim for relief is for intention infliction of emotional distress. In order to recover on a claim of intentional infliction of emotional distress under Colorado law Plaintiff must allege facts that establish the following: (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in such conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the defendant's conduct caused the plaintiff to suffer severe emotional distress. *See McCarty v. Kaiser-Hill Co.*, 15 P.3d 1122, 1126 (Colo. App. 2000). With respect to the first element, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999).

Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!" Restatement (Second) of Torts s 46, comment d at 73. (1965). One example, particularly pertinent to the special circumstances of this action, can be found in the Restatement, e.g., "the conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress. . . . A and her children are destitute, ill, and unable to pay their rent. B, their landlord, calls on A and threatens to evict her if the rent is not paid. Although B's conduct is heartless, he has done no more than the law permits him to do, and he is not liable to A for her emotional distress." Restatement *supra* comment g.

Incumbent upon the Court is to determine if the complaint contains enough allegations of fact, which, taken as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp.*

at 570.  I must determine whether the factual allegations plausibly suggest the defendant is liable. *Khalik*, 671 F.3d at 1190-91.  Here, Plaintiff defines the outrageous conduct as the "unlawfully imprisoning of Plaintiff in an immigration detention center, when Plaintiff consistently insisted that he [was] a citizen."  ECF # 1, p. 8.  Keeping in mind Plaintiff's framing of the issue, as well as the remaining facts set forth by Plaintiff in the complaint, which the Court must and does accept as true, I do not find that Plaintiff can prevail against the motion to dismiss.  With regard to the first prong, and keeping in mind that Defendant's lawful business is the operation of a detention facility, I do not find that Plaintiff has set forth sufficient facts necessary to show that Defendant engaged in extreme and outrageous conduct.  With regard to the second prong, there are not sufficient facts to show that the Defendant engaged in any conduct recklessly or with the intent of causing the plaintiff severe emotional distress. Receipt by a detention center of an inmate, in the custody of the arresting officer and with the proper documentation and then holding that individual for less than twenty-four (24) hours is not extreme, outrageous, reckless nor done with the intent to cause severe emotional distress.  Plaintiff has not set forth conduct, which as a matter of law, arises to the level necessary to state a claim for relief and for that reason I respectfully recommend that claim 3 be dismissed.

For the foregoing reasons, this Magistrate Judge respectfully recommends that the motion to dismiss be granted as to all claims.

Dated at Grand Junction, Colorado, this August 23, 2017.

_____
Gordon P. Gallagher
United States Magistrate Judge